Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN GAYLORD,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN TECHNOLOGY, INC., ANTONIO PIETRI, JILL SMITH, TOM BRADICICH, DON CASEY, KAREN GOLZ, AMAR HANSPAL, ADRIANA KARABOUTIS, GEORGIA KERESTY, ROBERT M. WHELAN, JR., and R. HALSEY WISE,<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff John Gaylord ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Aspen Technology, Inc. ("Aspen" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Aspen and Emerson Electric Co. ("Emerson").

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of Aspen common stock.

7. Defendant Aspen, together with its subsidiaries, provides asset optimization solutions in North America, Europe, the Asia Pacific, Latin America, and the Middle East. The

Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "AZPN."

8. Defendant Antonio Pietri ("Pietri") is President, Chief Executive Officer, and a director of the Company.

9. Defendant Jill Smith ("Smith") is Chair of the Board of the Company.

10. Defendant Tom Bradicich ("Bradicich") is a director of the Company.

11. Defendant Don Casey ("Casey") is a director of the Company.

12. Defendant Karen Golz ("Golz") is a director of the Company.

13. Defendant Amar Hanspal ("Hanspal") is a director of the Company.

14. Defendant Adriana Karaboutis ("Karaboutis") is a director of the Company.

15. Defendant Georgia Keresty ("Keresty") is a director of the Company.

16. Defendant Robert M. Whelan, Jr. ("Whelan") is a director of the Company.

17. Defendant R. Halsey Wise ("Wise") is a director of the Company.

18. Defendants Pietri, Smith, Bradicich, Casey, Golz, Hanspal, Karaboutis, Keresty, Whelan, and Wise are collectively referred to herein as the "Individual Defendants."

19. Defendants Aspen and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On October 11, 2021, Aspen and Emerson announced that they had entered into a definitive agreement to contribute Emerson's industrial software businesses – OSI Inc. and the Geological Simulation Software business – to Aspen. The press release announcing the Proposed Transaction states, in pertinent part:

**Emerson to Accelerate Software Strategy to Capitalize on High Growth Industry Verticals and Technology Segments in Transaction with AspenTech**

*Emerson to Receive 55% Stake of New AspenTech*

*AspenTech Shareholders to Receive Approximately $87 Per Share in Cash and 0.42 Shares of New AspenTech for each AspenTech Share, Providing Upside through 45% Stake*

*New AspenTech Expected to Drive Double-Digit Annual Spend Growth, Best-in-Class Profitability, Strong Free Cash Flow and Be Positioned to Pursue and Complete Strategic Transactions*

*Emerson Reaffirms Fiscal Year 2021 Underlying Sales Guidance of 5% to 6% and Adjusted EPS Guidance of $4.06 to $4.08*

*Companies to Host a Joint Conference Call Today at 8:30 AM ET*

October 11, 2021 06:55 AM Eastern Daylight Time

ST. LOUIS, Missouri & BEDFORD, Massachusetts--(BUSINESS WIRE)--Emerson (NYSE: EMR) and AspenTech (NASDAQ: AZPN) today announced that the companies have entered into a definitive agreement to contribute Emerson's industrial software businesses – OSI Inc. and the Geological Simulation Software business – to AspenTech to create a diversified, high-performance industrial software leader with greater scale, capabilities and technologies ("new AspenTech"). Emerson will also contribute $6.0 billion in cash to new AspenTech, which will be received by AspenTech shareholders, in exchange for a 55% stake in new AspenTech. New AspenTech will offer a highly differentiated industrial software portfolio with the capabilities to support the entire lifecycle of complex operations across a wide range of industry verticals, including design and engineering, operations, maintenance and asset optimization.

* * *

**Terms of the Transaction**

Under the terms of the agreement, AspenTech shareholders will receive approximately $87 per share in cash and 0.42 shares of common stock of the new AspenTech, a newly formed company, for each share of AspenTech common stock they own, which implies total consideration of approximately $160 per AspenTech share, and a total transaction equity value of approximately $11 billion before synergies. The total implied per share consideration amount represents a premium of approximately 27% compared to AspenTech's closing stock price on October 6, 2021, the last trading day prior to media speculation regarding a potential transaction, and a premium of approximately 26% to AspenTech's 30-day VWAP on October 6, 2021. Including expected synergies, the total value increases to $176

per share, a 40% premium compared to AspenTech's closing stock price on October 6, 2021. Upon completion of the transaction, Emerson will own 55% of the new AspenTech on a fully diluted basis and AspenTech shareholders will own 45%.

**Conclusion of Strategic Process**
Following a comprehensive review of AspenTech's strategic opportunities to increase shareholder value, AspenTech's Board concluded that Emerson is the ideal strategic partner for AspenTech and that this transaction structure provides the best opportunity to drive continued growth. Additionally, the transaction delivers immediate cash value to AspenTech shareholders, while also enabling them to participate in the long-term upside of new AspenTech.

**New AspenTech Headquarters, Leadership and Governance**
New AspenTech will be headquartered in Bedford, Massachusetts and Antonio Pietri, the current CEO of AspenTech, will be the CEO.

Following the close of the transaction, the Board of Directors of new AspenTech will consist of nine directors, five of whom will be designated by Emerson. Jill Smith, the current Chair of the Board of Directors AspenTech, will serve as Chair of the Board of Directors of new AspenTech.

**Path to Completion**
The transaction has been approved unanimously by Emerson's Board of Directors, and by unanimous vote of those AspenTech directors present (one director was absent, but confirmed full support). The transaction is expected to close in the second calendar quarter of 2022 and is subject to approval by AspenTech shareholders, regulatory approvals and other customary closing conditions. Upon completion of the transaction, new AspenTech will trade on NASDAQ under ticker symbol AZPN.

*   *   *

**Advisors**
Goldman Sachs & Co. LLC and Centerview Partners LLC are serving as financial advisors to Emerson, and Davis Polk & Wardwell LLP is serving as legal counsel. J.P. Morgan Securities LLC is serving as financial advisor to AspenTech, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

**About Emerson**
Emerson (NYSE: EMR), headquartered in St. Louis, Missouri (USA), is a global technology and engineering company providing innovative solutions for customers in industrial, commercial and residential markets. Our Automation Solutions business helps process, hybrid and discrete manufacturers maximize production, protect personnel and the environment while optimizing their energy and operating costs. Our Commercial and Residential Solutions business helps ensure human

comfort and health, protect food quality and safety, advance energy efficiency and create sustainable infrastructure. For more information visit Emerson.com.

**About Aspen Technology**
Aspen Technology (AspenTech) is a global leader in asset optimization software. Its solutions address complex, industrial environments where it is critical to optimize the asset design, operation and maintenance lifecycle. AspenTech uniquely combines decades of process modelling expertise with artificial intelligence. Its purpose-built software platform automates knowledge work and builds sustainable competitive advantage by delivering high returns over the entire asset lifecycle. As a result, companies in capital-intensive industries can maximize uptime and push the limits of performance, running their assets safer, greener, longer and faster. Visit AspenTech.com to find out more.

21. On January 11, 2022, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22. The Registration Statement, which recommends that Aspen shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Aspen's, Emerson's, and the combined company's financial projections; (ii) the financial analyses performed by Aspen's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Transactions; (ii) Recommendation of the AspenTech Board and Its Reasons for the Transactions; (iii) Opinion of AspenTech's Financial Advisor; and (iv) Projected Financial Data.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Aspen shareholders

will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Aspen's, Emerson's, and the Combined Company's Financial Projections**

25. The Registration Statement omits material information concerning Aspen's, Emerson's, and the combined company's financial projections.

26. With respect to the financial projections disclosed in the Registration Statement,[1] the Registration Statement fails to disclose: (1) all line items underlying the projections; (2) Aspen's, Emerson's, and the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Aspen and the combined company, and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Registration

---

[1] The "AspenTech February 19 Projections - Upside Case," "AspenTech May 10 Projections," "AspenTech September 7 Projections," "AspenTech Final Projections," "Adjusted Emerson Industrial Software Business Projections," "Adjusted Projected Synergies," and "Pro Forma Projections." *See* Registration Statement at 75-77.

Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning J.P. Morgan's Analyses**

30. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan.

31. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

32. Without the information described below, the Company's shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jan. 21, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**a. J.P. Morgan's Analyses of Emerson**

33. With respect to J.P. Morgan's "*Public Trading Multiples Analysis*" and "*Selected Transaction Multiples Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction J.P. Morgan observed in its analyses.

34. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) all line items underlying the projections of Emerson Industrial Software Business's unlevered free cash flows; (2) the range of terminal values of the Emerson Industrial Software Business; and (3) the individual inputs and assumptions underlying the (i) perpetual growth rate ranging from 4.5% to 5.5%, and (ii) range of discount rates from 8.50% to 9.50%.

**b. J.P. Morgan's Analyses of Aspen**

35. With respect to J.P. Morgan's "*Public Trading Multiples Analysis*" and "*Selected Transaction Multiples Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction J.P. Morgan observed in its analyses.

36. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) the line items underlying the projections of Aspen's unlevered free cash flows; (2) the range of terminal values of Aspen; and (3) the individual inputs and assumptions underlying the (i) perpetual growth rate ranging from 4.5% to 5.5%, and (ii) range

of discount rates from 8.50% to 9.50%.

**3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

37. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

38. The Registration Statement provides that:

> Commencing on January 20, 2021, representatives of J.P. Morgan began contacting potential counterparties (which included potential strategic and financial buyers and partners) regarding a potential strategic transaction. Representatives of J.P. Morgan initially contacted seven potential counterparties approved by the AspenTech Board, while representatives of five additional potential counterparties, including Emerson, Company A, and Company B, had already contacted either Mr. Pietri or representatives of J.P. Morgan to express interest in a potential transaction involving AspenTech. Eleven of these twelve potential counterparties (including Emerson) eventually entered into confidentiality agreements with AspenTech (and the other potential counterparty already had an existing confidentiality agreement with AspenTech). Eleven of the twelve confidentiality agreements included standstill provisions, and only two of the standstill provisions remained in effect after the execution and subsequent announcement of the Transaction Agreement and those two provisions continue in effect as of the date hereof. Neither of the two confidentiality agreements with current standstill provisions have a prohibition on requesting a waiver of the standstill from AspenTech and both agreements permit private acquisition proposals to AspenTech. These twelve potential counterparties were subsequently provided with preliminary due diligence materials.
>
> * * *
>
> On April 25, 2021, AspenTech executed a confidentiality agreement with Company F.

39. The Registration Statement, however, fails to disclose the terms of Aspen's confidentiality agreements with "Company F" and "the other potential counterparty [that] already had an existing confidentiality agreement with AspenTech," including whether such agreements contained "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

40. Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Aspen shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

42. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

43. The Registration Statement provides the following concerning the interests of the Board and the Company's officers in the Proposed Transaction:

> **INTERESTS OF ASPENTECH'S DIRECTORS AND EXECUTIVE OFFICERS IN THE TRANSACTIONS**
>
> * * *
>
> ***Leadership of New AspenTech***
>
> Effective as of the Closing, the New AspenTech Board will initially consist of nine members comprised of (i) five directors designated by Emerson Sub as follows: (A) Jill D. Smith, the chair of the AspenTech Board as of the date of the Transaction Agreement, who will be the initial chair of the New AspenTech Board, (B) three directors designated by Emerson Sub after consultation with Jill D. Smith, and (C) one director designated by Emerson Sub without any of the foregoing conditions, (ii) Antonio Pietri, Chief Executive Officer of AspenTech immediately prior to the Closing, and (iii) three directors that are Independent Directors designated by AspenTech, and reasonably acceptable to Emerson Sub, which directors shall have been designated by AspenTech prior to the designation of any director (other than Jill D. Smith) by Emerson Sub. Effective as of the Closing, the initial chair of the Compensation Committee shall be designated by AspenTech. The Stockholders Agreement provides that as of the Closing Antonio Pietri will be

the Chief Executive Officer of New AspenTech.

44. The Registration Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

45. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**COUNT I**
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder Against All Defendants**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

50. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

57. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)

667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*